DREW, J.
 

 _[iFrom a judgment granting motions for summary judgment and special motions to strike, James E. Bradford appealed and complained that the trial court erred in dismissing with prejudice his defamation action and casting him with $6,000 in attorney’s fees. For the following reasons, the judgment is reversed and the matter is remanded for further proceedings.
 

 Mr. Bradford, longtime president of the Grambling University National Alumni Association (“GUNAA”), brought this action for defamation against Dr. Gail Shorter Judson (“Dr. Judson”), wife of Grambling State University President Dr. Horace Judson. This litigation was predicated upon an email sent June 28, 2006, from Dr. Judson to Bettye Fontenot, a Grambling alumna, concerning a dispute between GSU and GUNAA over more than $800,000 in proceeds from the 2005 Bayou Classic football game. The email stated, among other things: ‘You or Johnny Williams should inquire about the $800k + Bayou Classic receipts in GUNAA’s Foundation that were taken illegally (or stolen, for lack of a better word) by Mr. Bradford on behalf of GUNAA.” Bettye Fontenot forwarded the email to Mr. Bradford, who filed this action for defamation.
 

 A 1965 Grambling State University graduate with a degree in Industrial Arts Education, Mr. Bradford has worked for 37 years at Smurfit Stone Container in Jonesboro, where he is now manager of Government Affairs. Shortly after his graduation, Mr. Bradford became a member of GUNAA and of the Jackson Parish Alumni Chapter. A lifetime member, Mr. Bradford was elected President of GU-NAA in 1992 and served for 14% 12years until December 31, 2006. Mr. Bradford listed the following purposes of GUNAA:
 

 • to support the university,
 

 • to act as liaison between the university and the alumni,
 

 • to raise funds for Grambling,
 

 • to recruit students, and
 

 • to perform public relations for the university.
 

 As described by Mr. Bradford, GUNAA was a nonprofit and all its activities were designed to support Grambling State University. In 1999, GUNAA became sponsor of the annual Bayou Classic, the nationally known football game between Grambling and Southern University. Prior to 1999, the Bayou Classic had been exclusively sponsored by the Grambling State University Foundation, with no involvement of GUNAA.
 

 Since the university could not legally act as sponsor of the event, GUNAA acted as sponsor and signed an Affiliation Agreement with the university. According to Mr. Bradford, GUNAA basically agreed to be liable for any claims arising out of the endeavor. Dr. Horace Judson, president of GSU, terminated the Affiliation Agreement by letter in 2005, months before the game. GUNAA had nothing to do with the 2005 Bayou Classic, but according to
 
 *978
 
 Mr. Bradford, in previous years GUNAA also provided no services to the Bayou Classic, but took the risk for any potential liability.
 

 Mr. Bradford stated that he was informed that GSU submitted GUNAA’s name, which was used without GUNAA’s knowledge and |,^consent, for the 2005 Bayou Classic. Bickerstaff Sports Entertainment, Inc., sent some $863,000 in 2005 Bayou Classic proceeds to GUNAA in late May of 2006. On June 6, 2006, the GSU president sent a letter requesting the proceeds be turned over to GSU. Six weeks later, on July 17, 2006, GSU received a check from GUNAA.
 
 [1]
 
 The delay in remitting the proceeds was apparently because of Mr. Bradford’s concerns about GU-NAA’s name being used without permission in connection with the 2005 Bayou Classic and about GUNAA’s accrual of potential liability due to the actions of GSU.
 

 After a detailed and thoughtful analysis on the law of summary judgment in defamation actions and on the law applicable to defamation, the trial judge found that in the context of this dispute, Mr. Bradford was a public figure and this “cause of action arose in connection with a public issue in furtherance of one party’s constitutional right of free speech.” Finding that Mr. Bradford failed to satisfy his burden of establishing a probability of success in his defamation claim, the trial court granted Dr. Judson’s motion for summary judgment and special motions to strike Mr. Bradford’s claims, with prejudice, and awarded Dr. Judson $6,000 in attorney’s fees with legal interest from judgment and all costs.
 

 DEFAMATION LAW
 

 In
 
 Kennedy v. Sheriff of East Baton Rouge,
 
 2005-1418 (La.7/10/06), 935 So.2d 669, the court examined the tort of defamation, which is the invasion of a person’s interest in his or her reputation and good name. Four elements are necessary to establish a claim for defamation: (1) a false and |4defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury. The fault is generally considered to be malice, actual or implied. By definition, a statement is defamatory if it tends to harm a person’s reputation, lowers the person in the estimation of the community, deters others from associating with the person, or otherwise exposes the person to contempt or ridicule.
 

 In Louisiana, defamatory words have traditionally been divided into two categories. First, words that are defamatory
 
 per se
 
 are those which expressly or implicitly accuse another of criminal conduct, or which by their very nature tend to injure one’s personal or professional reputation, without considering extrinsic facts or circumstances. When a plaintiff proves publication of words that are defamatory
 
 per se,
 
 falsity and malice (or fault) are presumed, but may be rebutted by the defendant. Injury may also be presumed. The second type are words that are susceptible of a defamatory meaning. In that case, a plaintiff must prove, in addition to defamatory meaning and publication, falsity, malice (or fault) and injury.
 
 Kennedy, supra.
 

 In
 
 Kennedy, supra,
 
 the court analyzed the development of the constitutional constraints on defamation actions to avoid abridging freedom of speech or freedom of
 
 *979
 
 the press guaranteed by the First Amendment of the United States Constitution. In
 
 New York Times Co. v. Sullivan,
 
 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), the Supreme Court held that the First Amendment prohibits a public official from recovering damages |sarising from a defamatory falsehood published concerning his or her official conduct unless the public official proved that statement was made with “actual malice,”
 
 i.e.,
 
 a statement known to be false or a statement made with reckless disregard of whether it was false or not. Traditional rules of defamation had imposed strict liability on the publisher of a defamatory statement which later proved to be false, regardless of whether the publisher had carefully checked the accuracy of the statement and reasonably believed it to be true. To avoid the chilling effect on constitutionally valuable speech and debate, the
 
 New York Times
 
 decision not only imposed the requirement of a high degree of fault in defamation actions brought by public officials, but also shifted the burden of proof of fault to the public official whose burden was to establish “actual malice” by clear and convincing evidence.
 
 Kennedy, supra.
 
 To prove “actual malice,” a plaintiff must demonstrate with clear and convincing evidence that the defendant realized that her statement was false or that she subjectively entertained serious doubt as to the truth of the statement.
 

 These constitutional protections were extended to public figures when the defamatory statements related to issues of public concern. A public figure was defined as a nonpublic official who was intimately involved in the resolution of an important public question.
 
 Curtis Publishing Co. v. Butts,
 
 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967). In
 
 Rosenbloom v. Metromedia, Inc.,
 
 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971), this protection was extended to communications concerning | (¡public or general concern regardless of whether the person involved was famous or anonymous.
 
 Kennedy, supra.
 

 A college student, Kennedy sued the fast food vendor and the East Baton Rouge Parish Sheriff when he was detained, cuffed and taken to a substation while deputies determined whether a $100 bill he tendered for the food was counterfeit. An employee had notified law enforcement, reporting the bill was suspected to be counterfeit. The bill was genuine and Kennedy was released and his money was returned. Kennedy, a nonpublic plaintiff, sued a nonmedia defendant (fast food vendor) concerning speech that was of public concern (a report to law enforcement of suspected criminal activity). In Louisiana, the extended constitutional protections apply to media and nonmedia defendants alike. See discussion,
 
 Kennedy,
 
 2005-1418 at pp. 9-11, 935 So.2d at pp. 677-679.
 

 The
 
 Kennedy
 
 court found that when a private individual sues a nonmedia defendant over a defamatory statement about a matter of public concern, the claimant must establish malice, or fault, which is a lack of the reasonable belief in the truth of the statement giving rise to the defamation.
 
 Kennedy, supra.
 
 The court applied the standard set out in Restatement (Second) of Torts § 580(B) to a defamatory statement concerning a private person (or a public figure in relation to a private matter not affecting his public capacity). Such a statement is subject to liability only if, the defendant (1) knows the statement is false and defamatory; (2) acts in reckless disregard of these matters; and (3) acts negligently in failing to ascertain them. Thus, to succeed, Kennedy had the burden of proving (1) a |7false and defamatory statement; (2) an unprivileged
 
 *980
 
 publication to a third party; (3) negligence, as defined in Restatement (Second) of Torts § 580(B); and (4) resulting injury. If any one of those elements was absent, the cause of action failed.
 

 In Louisiana, privilege is a defense to a defamation claim. The encouragement of free communication of views in particular circumstances without incurring liability for defamation is a matter of public policy. An absolute privilege exists for limited situations such as statements by judges and legislators in judicial or legislative proceedings.
 

 A conditional privilege may be found in situations in which the person’s interest is regarded as sufficiently important to justify some latitude for making mistakes so that publication of the defamatory statement is conditionally privileged. Impossible to precisely define, a conditional privilege has been described as containing these elements: good faith, an interest to be upheld, and a statement limited in scope to this purpose, a proper occasion, and publication in the proper manner and to proper parties only.
 
 Kennedy, supra.
 

 A conditional privilege clearly existed in
 
 Kennedy, supra.
 
 A strong public policy exists in favor of a conditional privilege being extended to reports to law enforcement of alleged wrongful acts to protect the public. Therefore, there is no civil liability imposed on a citizen for inaccurately reporting criminal misconduct with no intent to mislead. The fast food employee reported a matter of public interest to the proper authorities who had a duty to investigate.
 

 | SA conditional privilege may be defeated if the offended person proves that privilege was abused. Abuse is shown if the offended person establishes that the publisher knew the statement to be false or acted in reckless disregard to the statement’s truth or falsity. Recklessness requires a plaintiff to establish that the publication was deliberately falsified, or published despite the publisher’s awareness of probable falsity.
 
 Curtis Publishing Co. v. Butts, supra.
 
 Mere negligence concerning falsity (or lack of reasonable grounds for believing the statement is true) is not sufficient to prove abuse of a conditional privilege which requires proof of knowledge of falsity or reckless disregard as to falsity.
 
 Kennedy, supra.
 

 In
 
 Kennedy, supra,
 
 the court set out a two-step analysis for evaluating whether a conditional privilege exists. First, do the attending circumstances of a communication justify a conditional privilege? Second, was the privilege abused,
 
 i.e.,
 
 the examination of the grounds for malice (abuse or lack of good faith)? Generally, the first step is a question of law for the court while the second, a determination of abuse of privilege or malice, is a fact question for the trier of fact.
 

 SUMMARY JUDGMENT
 

 In
 
 Kennedy, supra,
 
 2005-1418 at p. 25, 935 So.2d at 686, the court stated:
 

 [B]ecause of the chilling effect on the exercise of free speech, defamation actions have been found particularly susceptible to summary judgment. Summary adjudication, we have recognized, is a useful procedural tool and an effective screening device for avoiding the unnecessary harassment of defendants by unmeritorious actions which threaten the free exercise of rights of speech and press.
 

 |9In
 
 Sassone v. Elder,
 
 626 So.2d 345 (La.1993), the supreme court stated that in order to survive a motion of summary judgment, a plaintiff in a defamation action must produce evidence of sufficient quality and quantity to demonstrate he is likely to
 
 *981
 
 meet his burden of proof at trial. In the later case of
 
 Kennedy, supra,
 
 the court observed that the 1996 legislative amendment to summary judgments, which ai'e now favored, made a different standard for defamation unnecessary. However, the conditions making defamation claims particularly susceptible to summary judgment are still the same.
 
 Kennedy, supra.
 

 It is well settled that appellate courts review summary judgments
 
 de novo
 
 under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. A court must grant a motion for summary judgment “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B). The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of civil actions (with the exception of certain domestic matters) and is favored in our law. La. C.C.P. art. 966(A)(2).
 

 The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mov-ant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that | ]nthere is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966(C)(2). A “genuine issue” is a “triable issue,” or one on which reasonable persons could disagree. A “material fact” is a fact, the existence or nonexistence of which may be essential to plaintiffs cause of action under the applicable theory of recovery.
 
 Kennedy, supra.
 

 DISCUSSION
 

 Dr. Judson sent the email to Ms. Fonte-not stating that the 2005 Bayou Classic proceeds were “taken illegally (or stolen, for lack of a better word) by Bradford[.]” As the trial court correctly found in the comprehensive reasons for judgment, this statement was defamatory
 
 per se
 
 (it accused Mr. Bradford of a crime) and the email constituted publication.
 

 While Mr. Bradford argues on appeal that the trial court erred in finding him to be a public figure, we agree with the trial court’s assessment that he is a public figure. Mr. Bradford was president of the Grambling’s national alumni association for many years and was actively involved in supporting the public university including Grambling’s efforts to televise and profit from the Bayou Classic football rivalry with Southern University. The record contained documents showing he was involved in many aspects of the university’s activities, including efforts to remove Dr. Judson’s Inhusband as university president. A prominent alumnus, Mr. Bradford was very active in seeking changes he felt were needed at the school.
 

 Clearly, Dr. Judson’s email communication to Ms. Fontenot pertained to a matter of public concern,
 
 ie.,
 
 a significant financial dispute affecting Grambling State University. The trial court also determined that a conditional privilege existed between Dr. Judson and Ms. Fontenot. Although not an employee of the university, Dr. Judson, as the wife of the university president, was .an active volunteer in university life and took on substantial tasks in the administration. She assisted her hus
 
 *982
 
 band in discharging his duties and was responding in his absence to an email from a Grambling alumna. Because she believed Ms. Fontenot was a Mend of Mr. Bradford’s and might have influence with him, Dr. Judson requested she speak to him about the disputed 2005 Bayou Classic Funds.
 

 In summary, we have a public figure (Mr. Bradford) bringing a defamation action against a nonmedia defendant (Dr. Judson) who published a communication that was defamatory
 
 per se
 
 (Mr. Bradford was stated to have stolen university funds). While as a public figure, Mr. Bradford is entitled to a rebuttable presumption of malice and injury, he still must establish actual malice by clear and convincing evidence.
 

 As previously noted, privilege is a defense to a defamation action. The attending circumstances establish that a conditional privilege existed for the communication from Dr. Judson to Ms. Fontenot. The women shared a common interest in the welfare of Grambling State University. As a response to an email from Ms. Fonte-not concerning GSU, Dr. Judson’s | ^communication was limited in scope on a proper occasion and manner. Initially, Dr. Judson sent the email only to Ms. Fonte-not requesting her assistance in resolving a dispute.
 

 To prevail in this defamation action, Mr. Bradford must show that there was an abuse of that conditional privilege. To prove abuse, Mr. Bradford must show that Dr. Judson knew that her theft statement was false or that she acted with reckless disregard to the truth or falsity of her accusation. To establish recklessness is very difficult, since the complaining person must show the publication was deliberately falsified or was communicated despite the publisher’s awareness of probable falsity.
 

 We agree with the trial court’s legal conclusion that a conditional privilege existed concerning the email. Our only disagreement with the trial court’s excellent analysis of this dispute is the ultimate result reached. The determination of abuse of the privilege is a genuine issue of material fact for the trier of fact. In the context of the motions for summary judgment, Mr. Bradford must produce evidence of sufficient quality and quantity to demonstrate he is likely to meet that burden at trial.
 
 Kennedy, supra.
 

 In this case, what constitutes truth depends completely on who is stating it. Dr. Judson vigorously asserted that Mr. Bradford, as president of GUNAA, held funds that belonged to GSU. Prior to sending the email, Dr. Judson was aware that Mr. Bradford had made a couple of efforts to return the funds to GSU in exchange for GSU agreeing to hold GUNAA harmless for any liability arising from the transaction and the use of GUNAA’s identification for the 2005 Bayou Classic. Apparently, Mr. Bradford’s | ^proposed venues and conditions for giving GSU the funds were unacceptable. At the time Dr. Judson sent her email on June 28, 2006, the money was still in GUNAA’s account. In Dr. Judson’s mind, Mr. Bradford held funds that did not belong to him, making her statement that he had illegally taken or stolen the fund completely true. Her information about the dispute came from her husband. She did not recall whether her husband told her Mr. Bradford had illegally taken or stolen the funds. Although Mr. Bradford’s attorney sent her correspondence asking her to retract her accusation and apologize for the language in the email, she said she was away from GSU the entire summer. She neither returned nor read her correspondence until after Labor Day, at which time suit had already been filed.
 

 
 *983
 
 The entire time line of this disagreement covers a relatively short period of time with the specific monetary issue lasting less than two months from start to finish. GSU got the proceeds from the 2005 Bayou Classic, just not quickly enough to suit Dr. Judson.
 

 Spring 2005 GSU ended GUNAA affiliation with Bayou Classic
 

 Fall 2005 Bayou Classic (GSU allegedly used GUNAA’s name)
 

 May 26, 2006 Bickerstaff Sports Enterprises, Inc., sent 2005 Bayou Classic proceeds to GUNAA
 

 June 6, 2006 GSU President asked GU-NAA to remit the funds to GSU
 

 June 2006 GUNAA sought to deliver the funds in exchange for GSU agreeing to hold GUNAA harmless for any liability associated with the use of GUNAA’s | ^identification to facilitate broadcast of the 2005 Bayou Classic
 

 June 28, 2006 Dr. Judson sent her email to Ms. Fontenot
 

 July 17, 2006 GSU received the disputed funds from GUNAA, less a $46,000 handling fee
 

 Although GSU through its president had terminated GUNAA’s association with the Bayou Classic, Mr. Bradford stated he learned that GUNAA’s name had been submitted without the organization’s knowledge and permission for use in getting the 2005 Bayou Classic televised. Because GUNAA’s name was apparently on the documentation with Bickerstaff Sports Enterprises, Inc., Bickerstaff remitted the proceeds to GUNAA. GSU quickly made demand for GUNAA to turn the money over to the university. Because GUNAA’s past function with the Bayou Classic had been primarily been its agreement to be responsible for any liability which arose out of the transaction, Mr. Bradford sought to protect GUNAA by requesting the GSU hold GUNAA harmless in the event any liability arose out of the 2005 Bayou Classic. Mr. Bradford also made unsuccessful efforts to make a presentation of the funds. Dr. Judson was aware of those negotiations at the time she sent her email. Mr. Bradford stated that he personally never received any funds related to the 2005 Bayou Classic which were sent to GUNAA and placed in that association’s bank account.
 

 As noted, the trial court provided an excellent road map for deciding this case, and her hard work has made our task easier. We find fault with little in the findings of the court below, other than its ultimate conclusion. We feel that plaintiff should have the right to try his case and prove it at a |1fifull trial. The email was hurtful and certainly unworthy as a characterization of a business dispute which had lasted, at that time, a few short weeks.
 

 Both sides are telling the “truth” as they know it. Weighing credibility has no place in a motion for summary judgment. Mr. Bradford should be permitted to present his version and Dr. Judson hers. The trier of fact can then weigh the credibility of the accounts and decide if Dr. Judson abused the conditional privilege by making her publication, which was deliberately falsified or communicated despite her awareness of probable falsity.
 

 DECREE
 

 We reverse the trial court’s granting of Dr. Judson’s motions for summary judgment, its granting of the special motions to strike, and its award of attorney’s fees. This ruling obviates consideration of any other assignments of error.
 

 At the cost of defendant, the judgment is reversed and the matter is remanded for further proceedings.
 

 REVERSED AND REMANDED.
 

 
 *984
 
 APPLICATION FOR REHEARING Before BROWN, WILLIAMS, STEWART, DREW and LOLLEY, JJ.
 

 | Rehearing denied.
 

 [1]
 

 . After a $46,000 handling fee was deducted by GUNAA, a check for $816,952.98 was received by GSU.