MOORE, J.
The plaintiff sued the State of Louisiana, Department of Public Safety and Corrections, Office of State Police, for defamation damages arising out of a news release by Troop E of the Louisiana State Police regarding a fatal automobile accident. The news release named the plaintiff, “John Martin, Jr., (W/M 87yrs)” as the driver of a pick-up truck on La. Hwy. 156 in Winn Parish, of which he lost control and rolled several times, ejecting his passenger, who was killed when struck by an oncoming vehicle. The report also stated that “alcohol usage is suspected of Mr. Martin, Jr.” The evidence at trial established that the driver was actually the plaintiffs father, of the same name but absent the suffix “Jr.” No explanation was forthcoming from the evidence as to how the mix-up occurred. The court held that the State was liable for defamation. After granting a new trial on the issue of damages, the court awarded the plaintiff $10,000 in damages with interest from date of judicial demand. The state filed this appeal. We reverse and render judgment.
Facts
The accident occurred on November 18, 2007, involving a Dodge pick-up truck owned and operated by Mr. John K. Martin. Known by his friends as Johnny Martin, age 56, Martin’s full name is John Kelly Martin. Mr. Martin has a son named John Kelly Martin, Jr., (known as “Kelly Martin”), age 37.
Johnny Martin lost control of his 2006 Dodge pick-up truck (vehicle # 1) while driving east on a curve of Hwy. 156. Leaving the highway, he hit a tree and the vehicle rolled over, ejecting his unrestrained passenger, Jimmy B. Griffin, Jr. Mr. Griffin landed on the highway and was immediately struck and killed by an oncoming westbound Kia Spectra (vehicle # 2). Debris from the rolled pick-up also damaged a third vehicle (vehicle # 3 on the report).
State Trooper C.J. Nugent from Troop E was dispatched to the accident scene. He arrived just after an ambulance left the scene carrying Johnny Martin to Lincoln General Hospital in Ruston. Winn Parish Deputy Joe Hines, who had arrived at the scene before Nugent, gave Nugent the vehicle registration certificate and told Nu-gent that the driver’s name was Johnny Martin. The truck was registered to John K. Martin, Sr. and the registration listed a Winnfield address. Nugent was unable to examine Johnny Martin’s driver’s license, *446 which Martin still had with him in the ambulance en route to the hospital.
Because alcohol use was suspected as a cause of the accident, Nugent radioed headquarters and requested that a blood test be performed upon Martin quickly (at the hospital). A state trooper from nearby Troop F was sent to Lincoln General, where he spoke with Martin and obtained a blood test.
While investigating the accident, Nugent kept in contact with his headquarters. He identified Martin’s Dodge truck as Vehicle # 1. Later, after leaving the scene, he contacted headquarters with a correction, stating that “vehicle # 1 is Jr. not Sr.
Following the usual protocol for accidents resulting in a fatality, the State Police assembled a report and made it available to the press. This report is constructed from information obtained from the reporting officers, dispatchers, vehicle registration information, and computer generated driver’s license information (in this case, there were two licenses retrieved from police computer records— one for the younger Martin and one for the elder Martin). The report named John K. Martin, Jr. as the driver of the pick-up truck. Although no one is certain how the driver came to be identified in the report as John K. Martin, Jr., there is speculation that the “Jr.” was picked up from Tpr. Nugent’s last call stating that vehicle # 1 was a junior, not senior. At trial, Nugent did not recall making the call, but stated that, because the message immediately prior to this one concerned Jimmy Griffin, he believed that the message was referring to the deceased, Jimmy Griffin, Jr., the passenger in vehicle # 1.
The report was compiled at headquarters by Sergeant Ronnie Dowden. Dow-den listed John K. Martin, Jr. as the driver of the Dodge pick-up. He stated that he got his information from the radio dispatcher who wrote down the information as it was radioed in from the accident scene. From this report, Trooper Scott Moreau prepared a news release, which went to the local media outlets. The report was broadcast on Shreveport and Alexandria TV news stations, the Shreveport Times, the Alexandria Town Talk, and the Monroe News-Star.
Trooper Nugent unsuccessfully tried to contact John K. Martin, Jr. several times during the days following the accident but was unsuccessful. On December 6, 2007, Chris Bowman, attorney for Kelly Martin, sent Nugent a letter declining an interview with Kelly Martin. The following day suit was filed against the Louisiana Department of Public Safety, Office of State Police (“State Police”).
The matter went to trial on January 18, 2011. The plaintiff testified regarding his embarrassment caused by the report. He had just returned from a Houston hospital after undergoing colon cancer surgery when the accident was reported. He notes that many fellow church members who had prayed for him and supported him in his battle with cancer heard the accident report. He also claims that the report caused him to lose some of his timber business from people no longer wanting to do business with him.
After the State presented the evidence summarized above, the court noted that the State Police had available the means of ascertaining the correct identity of the person driving the Dodge pick-up, but that it failed to do so. The court found the State liable for defamation. Regarding damages, the court took the matter under advisement and ordered the parties to sub *447 mit briefs.[1]
In due course, the plaintiff filed a motion for new trial on the issue of damages. Meanwhile, Judge Derr returned to the bench, granted the motion, and awarded $10,000 in damages.
This appeal followed.
Discussion
Defamation is a tort involving the invasion of a person’s interest in his or her reputation and good name. Kennedy v. Sheriff of East Baton Rouge, 05-1418 (La.7/10/06), 935 So.2d 669; Costello v. Hardy, 03-1146 (La.1/21/04); Bradford v. Judson, 44,092 (La.App. 2 Cir. 5/6/09), 12 So.3d 974. The four elements necessary to establish a claim for defamation are: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) by the publisher; and (4) resulting injury. Id. Fault in defamation claims is generally established by a showing of actual or implied malice. Id.
In Louisiana, defamatory words have traditionally been divided into two categories. Kennedy, supra; Bradford, supra. First, words that are defamatory per se are those which expressly or implicitly accuse another of criminal conduct, or which by their very nature tend to injure one’s personal or professional reputation, without considering extrinsic facts or circumstances. When a plaintiff proves publication of words that are defamatory per se, falsity and malice (or fault) are presumed, but may be rebutted by the defendant. Injury may also be presumed. The second type are words that are susceptible of a defamatory meaning. In that case, a plaintiff must prove, in addition to defamatory meaning and publication, falsity, malice (or fault) and injury. Kennedy, supra.
As discussed in Kennedy, supra, in New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), the Supreme Court held that the First Amendment prohibits a public official from recovering damages arising from a defamatory falsehood published concerning his or her official conduct unless the public official proved that statement was made with “actual malice,” i.e., a statement known to be false or a statement made with reckless disregard of whether it was false or not. Traditional rules of defamation had imposed strict liability on the publisher of a defamatory statement which later proved to be false, regardless of whether the publisher had carefully checked the accuracy of the statement and reasonably believed it to be true. To avoid the chilling effect on constitutionally valuable speech and debate, the New York Times decision not only imposed the requirement of a high degree of fault in defamation actions brought by public officials, but also shifted the burden of proof of fault to the public official plaintiff whose burden was to establish “actual malice” by clear and convincing evidence. Kennedy, supra. To prove “actual malice,” a plaintiff must demonstrate with clear and convincing evidence that the defendant realized that her statement was false or that she subjectively entertained serious doubt as to the truth of the statement.
These constitutional protections were extended to public figures when the defamatory statements related to issues of public concern. A public figure was de *448 fined as a nonpublie official who was intimately involved in the resolution of an important public question. Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967). In Rosenbloom v. Metromedia, Inc., 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971), this protection was extended to communications concerning public or general concern regardless of whether the person involved was famous or anonymous. Kennedy, supra; Bradford, supra.
In Kennedy, supra, Kennedy, a college student, sued a fast food vendor and the East Baton Rouge Parish Sheriff when he was detained, cuffed and taken to a substation while deputies determined whether a $100 bill he tendered for food was counterfeit. An employee had notified law enforcement, reporting the bill was suspected to be counterfeit. The bill was genuine and Kennedy was released and his money was returned. Kennedy, a nonpublic plaintiff, sued a nonmedia defendant (a fast food vendor) concerning speech that was of public concern (a report to law enforcement of suspected criminal activity). In Louisiana, the extended constitutional protections apply to media and nonmedia defendants alike. See Kennedy discussion, supra at pp. 9-11, 935 So.2d at pp. 677-679.
The Kennedy court found that when a private individual sues a nonmedia defendant over a defamatory statement about a matter of public concern, the claimant must establish malice, or fault, defined as a lack of a reasonable belief in the truth of the statement giving rise to the defamation. Kennedy, supra. The court applied the standard set out in Restatement (Second) of Torts § 580(B) to a defamatory statement concerning a private person (or a public figure in relation to a private matter not affecting his public capacity). Such a statement is subject to liability only if, the defendant (1) knows the statement is false and defamatory; (2) acts in reckless disregard of these matters; and (3) acts negligently in failing to ascertain them. Thus, to succeed, Kennedy had the burden of proving (1) a false and defamatory statement; (2) an unprivileged publication to a third party; (3) negligence, as defined in Restatement (Second) of Torts § 580(B); and (4) resulting injury. If any one of those elements was absent, the cause of action failed.
 Privilege is a defense to a defamation claim in Louisiana. The encouragement of free communication of views in particular circumstances without incurring liability for defamation is a matter of public policy. An absolute privilege exists for limited situations such as statements by judges and legislators in judicial or legislative proceedings. See, e.g., La. R.S. 14:50.
A conditional or qualified privilege arises in situations in which the person’s interest is regarded as sufficiently important to justify some latitude for making mistakes so that publication of the defamatory statement is conditionally privileged. Impossible to precisely define, a conditional privilege has been described as containing these elements: good faith, an interest to be upheld, and a statement limited in scope to this purpose, a proper occasion, and publication in the proper manner and to proper parties only. Kennedy, supra.
A strong public policy exists in favor of a conditional or qualified privilege being extended to reports to law enforcement of alleged wrongful acts to protect the public. Therefore, there is no civil liability imposed on a citizen for inaccurately reporting criminal misconduct with no intent to mislead. The fast food employee reported a matter of public interest to the proper authorities who had a duty to investigate. Kennedy, supra. A qualified *449 privilege also extends to the fair reporting of investigations or arrests. Crawford, 12 Louisiana Civil Law Treatise, § 17:11.
A conditional privilege may be defeated if the offended person proves that privilege was abused. Abuse is shown if the offended person establishes that the publisher knew the statement to be false or acted in reckless disregard to the statement’s truth or falsity. Recklessness requires a plaintiff to establish that the publication was deliberately falsified, or published despite the publisher’s awareness of probable falsity. Curtis Publishing Co. v. Butts, supra. Mere negligence concerning falsity (or lack of reasonable grounds for believing the statement is true) is not sufficient to prove abuse of a conditional privilege which requires proof of knowledge of falsity or reckless disregard as to falsity. Kennedy, supra.
Discretionary Acts Immunity
By its first assignment of error, the State contends that the trial court erred in finding it liable to the plaintiff for defamation. It maintains that the State Police have immunity under La. R.S. 9:2798.1, 1.e., the so-called “discretionary acts” immunity granted to governmental officials and public entities for certain policymak-ing and discretionary acts. Alternatively, the defendant claims that it is protected from liability by the conditional or qualified privilege provided under La. R.S. 14:49(2)(A), which requires a showing of actual malice regarding a defamatory statement. The evidence in this case, it argues, proves that the State Police lacked any malice.
The plaintiff argues that La. R.S. 9:2798.1 does not apply in this case because the inaccurate report constituted “criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct,” which is exempted under R.S. 9:2798.1(0(2).
In Hardy v. Bowie, 98-2821 (La.9/8/99), 744 So.2d 606, the Louisiana Supreme Court provided a two-step test to determine whether the indiscretionary acts exception under this statute applies to a specific set of circumstances:
A court must first consider whether the government employee had an element of choice. “[T]he discretionary function exception will not apply when a [... ] statute, regulation, or policy specifically prescribes a course of action for an employee to follow. In this event, the employee has no rightful option but to adhere to the directive.” If the employee had no discretion or choice as to appropriate conduct, there is no immunity. When discretion is involved, the court must then determine whether that discretion is the kind which is shielded by the exception that is one grounded in social, economic or political policy. If the action is not based on public policy, the government is liable for any negligence, because the exception insulates the government from liability only if the challenged action involves the permissible exercise of a policy judgment.
In this instance, the duties of law enforcement agencies and employees regarding investigation of and gathering information from the driver of a vehicle involved in an accident as well as reporting that information to news-gathering agencies is statutorily provided for in La. R.S. 32:398.[2] The State Police and its employ *450 ee, Tpr. Nugent, had a statutory duty to investígate the highway accident and to obtain the information of those parties involved in the accident. Trooper Nugent investigated the accident as required by the statute. He was unable to obtain the driver’s license of the driver of the pick-up truck, but relied upon the work of Deputy Hines, who identified John Martin as the driver of the vehicle and whom Hines said he personally knew. Trooper Nugent took possession of the vehicle registration certificate which named “John K. Martin, Sr.” as the registered owner of the vehicle.
Thus, while defendant correctly contends that investigating and reporting accidents to the public is part of its public duty function, and Tpr. Nugent was acting pursuant to his investigative duties as a law enforcement officer in this case, because investigating and reporting accidents is a non-discretionary statutory duty of law enforcement, we find it does not qualify as a discretionary act subject to the immunity provisions of La. R.S. 9:2798.1. Hardy v. Bowie, supra.
Qualified Privilege
Alternatively, the state argues that publication of an errant comment regarding public affairs that was reasonably believed to be true is protected by qualified immunity under La. R.S. 14:49(2)(a). *451 This statute along with sections 47, 48, and 50 of Title 14 of the Revised Statutes are in the Criminal Code, and pertain to defamation as a criminal offense. “Criminal statutes are not, in and of themselves, definitive of civil liability and do not set the rule for civil liability; but they may be guidelines for the court in fixing civil liability.” Gugliuzza v. K.C.M.C., Inc., 92-C-0796 (La.10/19/92), 606 So.2d 790; Laird v. Travelers Ins. Co., 268 La. 199, 267 So.2d 714, 717 (1972). In determining the existence of a civil duty, the inquiry must focus on whether the statute was intended to protect a particular plaintiff from the type of harm which ensued. Gugliuzza, supra. Defamation is a quasi-offense and as such is governed by Louisiana Civil Code Art. 2315, relating to liability for an act causing damage. Nevertheless, the defense of privilege has long been recognized in both criminal and civil proceedings for defamation. State v. Lambert, 188 La. 968, 178 So. 508 (1938); See, Kennedy, supra.
Following the criteria set out by the supreme court in Kennedy, supra, to prevail in this defamation action, the plaintiff must show that there was an abusé of that conditional or qualified privilege enjoyed by police in their investigation and reporting of events of public interest. To prove abuse, Mr. Martin, Jr. was required to show that the state troopers knew that their report disseminated to the news media naming John K. Martin, Jr. (W/M 37 years) was false or that they acted with reckless disregard to the truth or falsity of the report naming John K Martin, Jr. as the driver of the pick-up truck. To establish recklessness is very difficult, since the complaining person must show the publication was deliberately falsified or was communicated despite the publisher’s awareness of probable falsity.
We review the factual findings of the trial court under the manifest error standard, and legal conclusions made by the trial court for error of law.
At the conclusion of the evidence, the trial court ruled from the bench, briefly reviewing the evidence. It noted that the information publicized was a matter of public interest, but that publishers should make sure that their information is accurate. It noted that Tpr. Nugent’s report did not contain a reference to John K. Martin, Jr., age 37. The blood test taken the night of the accident identified the driver as John K. Martin, Sr. There were other documents that referred to John K. Martin, Sr.; however, the two driver’s licenses of both Martins were in the file, both having been pulled from state records. The court concluded that someone in a hurry to get the matter publicized inserted John K. Martin, Jr. into the appropriate report blank, even though his driver’s license does not contain the suffix, “Jr.,” with his name. It concluded that this was “almost gross negligence not to determine who, uh, the correct person was here.” It concluded that the state was liable.
The only part of the trial court’s reasons for judgment that indicate that it might have considered the qualified or conditional privilege defense raised by the state was the initial statement by the court that publication of the report was a matter of public interest. We are unable to ascertain from this statement whether the court was referring to the immunity conferred by La. R.S. 9:2798.1 or the qualified privilege recognized by our constitutional and tort jurisprudence discussed above. The evidence in this case indicates that the mistake was very likely a clerical error, given the fact that the driver and the plaintiff have the same name, except for the suffix, which was not on several documents, the fatality victim in the accident was a “Jr.,” and the radio communication from Tpr. Nugent in which he said “vehi- *452 ele # 1 was a junior,” coupled with the urgency with which these reports are made. The error is at most, simple inadvertence or negligence, but certainly not rising to the level of recklessness required to show abuse of privilege in order to defeat the qualified privilege afforded to the defendant in this case. Kennedy, supra.
We therefore conclude that the trial court erred as a matter of law in not applying the qualified privilege to the circumstances in this case, and it was clearly wrong in not finding that the plaintiff failed to show that the defendant abused the privilege in this case.
This conclusion obviates the need for consideration of the remaining assignments of error related to damages.
CONCLUSION
Accordingly, the judgment of the trial court finding the State liable for defamation is reversed, and the award of damages to the plaintiff is vacated and set aside. We render judgment in favor of the defendant, State of Louisiana, Department of Public Safety and Corrections, Office of State Police, dismissing all claims at plaintiffs cost.
REVERSED AND RENDERED.

. Before a written judgment awarding damages was rendered, the trial judge, Judge Derr, became ill and had to take a leave of absence. Retired Supreme Court Justice Joe Bleich was assigned by the Supreme Court as judge pro tempore to assist with the district court’s docket. Judge Bleich rendered judgment in the case, following Judge Derr's ruling on liability and awarding $3000 in damages.

. The pertinent sections of La. R.S. 32:398 state:
A. The driver of a vehicle involved in an accident resulting in injury to or death of any person or property damage in excess of five hundred dollars shall:
(1) Immediately ... give notice of the accident to the local police department if the *450 accident occurs within an incorporated city or town or, if the accident occurs outside of an incorporated city or town, to the nearest sheriff's office or state police station.
(2) Give his name, address, and the registration number of the vehicle he was driving and, upon request and if available, exhibit his license or permit to drive to any person injured in such accident or to the driver or occupant of or person attending any vehicle or other property damaged in the accident.
(3) Give such information and, upon request, exhibit such license or permit to any police officer at the scene of the accident or who is investigating the accident.
[[Image here]]
D. It shall be the duty of the state police or the sheriff's office to investigate all accidents required to be reported by this Section when the accident occurs outside the corporate limits of a city or town.... Every law enforcement officer who investigates an accident, as required by this Subsection, shall instruct the driver of each vehicle involved in the accident to report the following to all parties suffering injury or property damage as an apparent result of the accident:
(1) The name and address of the owner and the driver of the vehicle.
(2) The license number of the vehicle.
(3) The name of the liability carrier for the vehicle, the name, address, and telephone number of the insurance agent who procured the liability policy providing coverage for the vehicle.
[[Image here]]
K. (l)(a) The reports required by this Section, and the information contained in the reports, shall be confidential, shall be exempt from the provisions of R.S. 44:1 et seq., and shall be made available only: to the parties to the accident, parents or guardians of a minor who is a party to the accident, and insurers of any party which is the subject of the report; to the succession representatives of those parties, or to the attorneys of the parties or succession representatives; or to a news-gathering organization that requests documents related to the accident. Upon request, accident reports shall be made available to the above-enumerated persons within seven working days following the completion of the accident investigation. For the purposes of this Subsection: “news-gathering organization” means any of the following:
(i) A newspaper, or news publication, printed or electronic, of current news and intelligence of varied, broad, and general public interest, having been published for a minimum of one year and that can provide documentation of membership in a statewide or national press association, as represented by an employee thereof who can provide documentation of his employment with the newspaper, wire service, or news publication.
(ii) A radio broadcast station, television broadcast station, cable television operator, or wire service as represented by an employee thereof who can provide documentation of his employment.