Judgment rendered December 18, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,026-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

CESAR GONZALES, MD                    Plaintiff-Appellant

versus

PALMETTO ADDICTION                    Defendant-Appellee
RECOVERY CENTER, INC.

* * * * *

Appealed from the
Fifth Judicial District Court for the
Parish of Richland, Louisiana
Trial Court No. 47,946

Honorable Stephen Gayle Dean, Judge

* * * * *

KARL BERNARD LAW                      Counsel for Appellant
By: G. Karl Bernard
    Eric Louis Register
    Jonathan Aperwhite

JACKSON LEWIS P.C.                    Counsel for Appellee
By: Michael B. Taylor

* * * * *

Before STEPHENS, ROBINSON, and ELLENDER, JJ.

**ROBINSON, J.**

Dr. Cesar Gonzales ("Gonzales") appeals a judgment granting a summary judgment and dismissing his defamation lawsuit. For the following reasons, we affirm the judgment.

## FACTS

Palmetto Addiction Recovery Center ("Palmetto"), an inpatient residential treatment center for substance abuse disorders, is located in Rayville, Louisiana. Gonzales was treated at Palmetto in 2006 for alcohol and drug addictions. After he was discharged, he underwent outpatient treatment for two years. He was hired by Palmetto to be a staff physician in November of 2010.

KS, a nurse seeking treatment for addiction, was admitted to Palmetto on May 8, 2012. Gonzales renewed one of her medication prescriptions later that month. KS was discharged on August 14, 2012, but was still considered a client of Palmetto for two years following discharge.

On October 17, 2012, Gonzales participated in a group therapy session with KS. On November 15, 2012, Gonzales wrote a letter to the Louisiana State Board of Nursing reporting on KS's progress. He determined that she was in early full remission from chemical dependency.

On or about January 25, 2013, Palmetto received a copy of a letter that was sent by KS's husband to the Louisiana State Board of Medical Examiners. In the January 24th letter, he accused Gonzales of having an affair with his wife while she was a patient. He specifically accused Gonzales of purchasing plane tickets on December 24, 2012, and taking his wife to his hometown of El Paso, Texas in the beginning of January. A copy

of the flight itinerary was attached. KS's husband wrote that his wife was seeking a divorce and he knew the affair had continued because his wife's car had been seen at Gonzales's house.

Barbara McGill is the Director of the Monitoring Program of the Louisiana State Board of Nurses Recovering Nurse Program. McGill, who was a major referral source for nurses needing addiction treatment, called Palmetto on January 25, 2013, and threatened to no longer refer nurses to Palmetto because one of its doctors was having sex with one of her nurses.

Palmetto fired Gonzales on January 25, 2013. His termination report stated that he was fired for violating policies and procedures. His separation notice stated he was fired for violating core ethics and policies.

Darren Davis, Palmetto's chief operating officer at the time, reported to the counselors and doctors that Gonzales was no longer employed there because he had been in a sexual relationship with a patient. Following his termination, Gonzales underwent a three-week professional boundary violation evaluation program at the Acumen Institute in Kansas.

Gonzales and KS became engaged on December 21, 2013, and were married on May 10, 2014. Gonzales continued his medical career in the area. He became medical director at Broken Wings, an addiction treatment facility, in March of 2020.

On April 24, 2020, Broken Wings sent a "hospital affiliation questionnaire" regarding Gonzales to Palmetto. The questionnaire was accompanied by a release executed by Gonzales, which stated:

> I release and discharge Broken Wings Recovery Center . . . and all other persons or entities supplying information to them from liability or claims of any kind or character in any way arising

2

out of inquiries concerning me or disclosures made in good faith without malice in connection with my application.

Hollye Rogers, Palmetto's chief operating officer since 2016, completed the questionnaire. Rogers had been a counselor at Palmetto when Gonzales was fired. She marked that Gonzales was no longer on staff, and gave "relationship [with] patient" as the reason. She checked "YES" when asked if Gonzales had been under investigation or subject to disciplinary proceedings by Palmetto or if he had any signs of behavior, drug, or alcohol problems. She rated him as "poor" for patient management, ethical conduct, and compliance with bylaws, rules and regulations, policies and procedures. Nevertheless, she recommended him as qualified and competent.

Rogers also submitted a handwritten note to Broken Wings. It stated that Gonzales had engaged in a sexual relationship with a patient leading to his termination. It also stated that Gonzales underwent treatment for chemical dependency and seemed to currently be active in recovery.

On November 23, 2020, Gonzales filed a defamation lawsuit against Palmetto. He alleged that upon receiving the questionnaire and additional handwritten note from Palmetto, Broken Wings rescinded an earlier offer and presented him with a new offer with much less favorable terms. He further alleged that despite offering him a position in March of 2020, LSUHSC-Shreveport informed him in July of 2020 that he was no longer being considered for the position, which he attributed to the disclosure made by Rogers.

3

Gonzales alleged that Rogers's written responses contained false statements that at the time of their publication were known to include false allegations, including that he engaged in a sexual relationship with a patient while employed at Palmetto. He maintained that Palmetto was not acting with any legitimate purpose or under a privilege when publishing the false allegation.

Palmetto filed an answer and raised various affirmative defenses, including that the alleged defamatory statements were subject to the privilege found in La. R.S. 23:291(A).

On February 22, 2023, Palmetto filed a motion for summary judgment. Submitted in support of the motion were: (1) excerpts from Gonzales's deposition; (2) Palmetto's administrative policies; (3) the prescription for KS renewed by Gonzales; (4) the note verifying that KS had participated in therapy on October 17, 2012; (5) the November 15, 2012, letter from Gonzales to the Louisiana State Board of Nursing documenting KS's progress; (6) the airline itinerary for the trip to El Paso; (7) Gonzales's discharge summary and recommendations from the Acumen Institute; (8) his follow-up reports from Acumen; (9) the release signed by Gonzales; (10) excerpts from Hollye Rogers's deposition; (11) Broken Wings' questionnaire that was completed by Rogers along with the handwritten statement; (12) Gonzales's responses to Palmetto's first set of admissions; (13) an affidavit from Dr. Jay Weiss; and (14) an affidavit from Rogers.

Dr. Weiss is a staff psychiatrist at Palmetto. He testified in his affidavit that McGill called Palmetto in January of 2013 to say that she received the letter from KS's husband and was very upset that one of

4

Palmetto's doctors was having sex with one of her nurses. According to Dr. Weiss, Gonzales did not deny it when confronted by him and Darren Davis about the affair. Dr. Weiss further testified that Gonzales was terminated for violating Palmetto's core ethics policies by having a romantic relationship with a patient.

Rogers testified in her affidavit regarding KS's treatment dates at Palmetto. She further testified that Palmetto terminated Gonzales on January 25, 2013, for violating its core ethics policies by having a romantic relationship with a Palmetto patient. To the best of Rogers's knowledge, Palmetto never released any information about Gonzales to LSUHSC-Shreveport. She maintained that she completed the questionnaire in good faith and answered its questions truthfully.

Gonzales attached the deposition of Rogers, as well as his own deposition, to his opposition to the motion for summary judgment. Rogers was questioned at length about her characterization of the relationship that Gonzales had with KS at the time that he was fired. She explained that Gonzales had developed an intimate relationship with a patient. While she acknowledged that an intimate relationship does not have to be sexual, in her view it included a sexual relationship as it pertained to Gonzales.

Rogers did not know Palmetto's procedure for investigating a complaint against a staff member when she was a counselor. She was unsure if Palmetto currently had one. The information that she provided to Broken Wings was based on her observations when Gonzales was there and what was in his personnel file.

Gonzales testified in his deposition that he met KS at an AA meeting in Monroe after evaluating her the prior month. The first time that they met outside of an AA meeting was in December of 2012, when they went with a large group to a restaurant after a meeting. He went to several other meals with her in a group after AA meetings. He did not socialize with her on a one-on-one basis until the trip to El Paso. He wanted to take her on a trip and have her take a vacation where they could get closer. He insisted that they slept in separate rooms at his parents' home in El Paso. He regarded her at the time as a friend with potential.

Before he was fired, KS sent him a text message stating that she wanted them to be together, and he replied that he wanted the same. According to Gonzales, they kissed for the first time on April 25, 2013, and had sex for the first time in May or June of 2013. He wanted her divorce to be finalized before they could start officially dating; he thought she was divorced in early 2013. They began living together in October or November of 2013.

Gonzales testified that after Palmetto received the letter from KS's husband, he was called into a meeting with Davis and Dr. Weiss. They asked if the letter was accurate, and he said it was. They also asked him if KS was a romantic partner, and he responded that he did not know yet, but thought it was headed in that direction. Gonzales understood his signed waiver allowed Palmetto to release information about his substance abuse and termination.

Gonzales supplemented his opposition with: (1) Palmetto's administrative policies; (2) the husband's letter to the Louisiana State Board

6

of Medical Examiners; (3) Palmetto's termination report and separation notice; (4) the completed questionnaire with handwritten statement; (5) the consent and release of liability signed by him; and (6) LSUHSC-Shreveport's employment offer.

On January 30, 2024, the trial court rendered judgment granting Palmetto's motion for summary judgment. The court first addressed Gonzales's burden to prove the statement was false. The court noted that despite Gonzales's vehement denial that the relationship with KS was of a sexual nature before he was fired, the documents filed with the motion supported a reasonable conclusion that the admittedly inappropriate relationship was sexual in nature as that term is commonly understood. Thus, Palmetto met its burden to show the absence of factual support to prove it was a false statement. The court then stated that Gonzales failed to produce any factual support sufficient to establish the existence of a genuine issue of material fact.

Next, the court concluded that the alleged defamatory statement would fall within the purview of the liability release signed by Gonzales. The court noted that Gonzales made absolutely no showing that Rogers' statement was anything other than a disclosure made in good faith without malice.

Finally, the court found that the immunity or privilege granted under La. R.S. 23:291 applied in this matter. That statute states, in part:

> A. Any employer that, upon request by a prospective employer or a current or former employee, provides accurate information about a current or former employee's job performance or reasons for separation shall be immune from civil liability and other consequences of such disclosure provided such employer is not acting in bad faith. An employer shall be considered to be acting in bad faith

7

only if it can be shown by a preponderance of the evidence that the information disclosed was knowingly false and deliberately misleading.

The court concluded that the information provided by Palmetto to Broken Wings was accurate, and that Palmetto did not act with knowledge of falsity or reckless disregard for truth.

**DISCUSSION**

The tort of defamation is the invasion of a person's interest in his or her reputation and good name. *Bradford v. Judson*, 44,092 (La. App. 2 Cir. 5/6/09), 12 So. 3d 974, *writ denied*, 09-1648 (La. 10/16/09), 19 So. 3d 482. Four elements are necessary to establish a claim for defamation: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury. *Kennedy v. Sheriff of East Baton Rouge*, 05-1418 (La. 7/10/06), 935 So. 2d 669. The fault requirement is generally considered to be malice, actual or implied. *Id.*

If even one of the elements for a defamation claim is absent, the cause of action fails. *Wyatt v. Elcom of Louisiana, Inc.*, 34,786 (La. App. 2 Cir. 6/22/01), 792 So. 2d 832.

In Louisiana, defamatory words have traditionally been separated into two categories: those that are defamatory *per se* and those that are susceptible of a defamatory meaning. *Kennedy*, *supra*; *Costello v. Hardy*, 03-1146 (La. 1/21/04), 864 So. 2d 129. Words which expressly or implicitly accuse another of criminal conduct, or which by their very nature tend to injure one's personal or professional reputation, without considering extrinsic facts or circumstances, are considered defamatory *per se*. *Kennedy*,

8

*supra*. When a plaintiff proves publication of words that are defamatory *per se*, falsity and malice (or fault) are presumed, but may be rebutted by the defendant. *Costello*, *supra*.

Gonzales contends that the accusation that he had a sexual relationship with a patient was defamatory *per se* because it injured his personal and professional reputation.

In *Costello, supra*, the supreme court held that the malice, or fault, necessary to establish an action in defamation is the lack of reasonable belief in the truth of the statement giving rise to the defamation. *Kennedy*, *supra*. "Malice in this sense is more akin to negligence with respect to the truth than to spite or improper motive." *Costello*, 03-1146 at pp. 18-19, 864 So. 2d at 143.

A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3).

Regarding the burden of proof on the motion, La. C.C.P. art. 966(D)(1) states:

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

9

Because of their chilling effect on the exercise of free speech, defamation actions traditionally have been found particularly appropriate for resolution by summary judgment. *Johnson v. Purpera*, 20-01175 (La. 5/13/21), 320 So. 3d 374.

In the defamation setting, a plaintiff opposing summary judgment bears a burden of proof more onerous than plaintiffs in other actions, and must demonstrate that she can produce sufficient evidence at trial to prove the elements of the case with convincing clarity. *Bell v. Rogers*, 29,757 (La. App. 2 Cir. 8/20/97), 698 So. 2d 749.

A summary judgment is reviewed on appeal *de novo*, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate, *i.e.*, whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. *Samaha v. Rau*, 07-1726 (La. 2/26/08), 977 So. 2d 880.

Gonzales argues that the trial court weighed the evidence and gave more weight to the "speculation and intuition-based arguments" asserted by Palmetto while "disbeliev[ing] the specific facts, based on personal knowledge," asserted by Gonzales.

Gonzales takes offense that his inappropriate relationship with a patient was characterized by Rogers as a sexual relationship when she answered the background inquiry initiated by Gonzales. KS's husband repeatedly called it an affair throughout his letter. In contrast, the only evidence that it was not a sexual relationship prior to termination is Gonzales's self-serving testimony. Notably, there was no evidence

submitted by the other party to the relationship, KS, who is now Gonzales's wife, about the manner in which they conducted their relationship prior to Gonzales's termination.

In any event, whether or not there was a sexual relationship prior to Gonzales's termination was not the sole basis for the trial court granting the motion for summary judgment.

The trial court found that the liability waiver signed by Gonzales applied to the alleged defamatory statement. The waiver applied to disclosures made in good faith without malice in connection with his application. Gonzales argues there is a genuine issue of material fact concerning whether Rogers was in good faith when making the disclosure. We agree with the trial court that there was no showing by Gonzales that the statement was anything other than a disclosure made in good faith without malice. Moreover, the statement was invited by Broken Wings and Gonzales when the questionnaire was sent to Palmetto.

In addition, the privilege found in La. R.S. 23:291(A) is applicable. It provides for immunity to Palmetto from civil liability because, upon request from Broken Wings and Gonzales, it provided accurate information in good faith about Gonzales's reasons for separation. Under the terms of the statute, an employer is considered to have acted in bad faith "only if it can be shown by a preponderance of the evidence that the information disclosed was knowingly false and deliberately misleading."

Gonzales has not presented any evidence of bad faith on the part of Rogers. She relied on her observations and what was in the personnel file when making the disclosure. At the time of the termination, Palmetto had

11

received allegations that Gonzales had been in a sexual relationship with a patient. Moreover, Dr. Weiss recalled that Gonzales did not deny the affair when confronted about it.

## CONCLUSION

For the foregoing reasons, the judgment is affirmed at Gonzales's costs.

AFFIRMED.