GARRETT, J.
| immediately after a federal court proceeding in Monroe, Louisiana, in a highly publicized criminal matter, a television reporter approached one of the defendants in that case and asked the following question: Eddie Hakim gave testimony to make his IRS investigation go away. Is it enough to acquit you?
Following the broadcast of this exchange, the plaintiff in the present matter, N. Edward Hakim, the key government witness in the criminal trial, brought suit for defamation against the reporter, Daisy O’Donnell, and her employer, Nexstar Broadcasting, Inc., d/b/a KTVE NBC 10 (“Nexstar”). For the reasons given below, we affirm the ruling of the trial court which granted summary judgment in favor of the defendants and dismissed the case.
FACTUAL AND PROCEDURAL BACKGROUND
Hakim is a businessman in Monroe who became involved in the bribery of two Monroe City Council members, Robert E. “Red” Stevens and Arthur Gilmore, Jr. Hakim began paying bribes to the councilmen in 2006. In early 2008, he contacted the FBI. Hakim aided the FBI in obtaining audio and videotape recordings of the transactions from early 2008 until late 2009.
In October 2009, Blake Deshotels, a former employee of Hakim, went to the IRS and alleged that Hakim committed tax fraud by hiding assets from the government and committing criminal tax violations. In November 2009, a criminal IRS investigation of Hakim was opened by the IRS, but Hakim was not notified of the investigation. The investigation was closed in May 2010. Ordinarily, the matter would have been referred for a civil IRS investigation to determine whether to *1183 conduct an audit. However, IRS ^Special Agent Darrin Heusel, at the instruction of his supervisor, held the case in abeyance due to Hakim’s cooperation in the case against Stevens and Gilmore.
In June 2010, Stevens and Gilmore were indicted for violating the federal Racketeer Influenced and Corrupt Organizations Act (“RICO”), by taking bribes in connection with their positions as city councilmen, and the Hobbs Act, which makes it illegal for public officials to use the power of their offices to extort money. The case was tried in federal court in 2011. Hakim was the main witness for the prosecution. Stevens and Gilmore were convicted by a jury on May 10, 2011.
Near the end of the trial, Deshotels informed counsel for Stevens that he had complained to the IRS regarding Hakim and an investigation was opened, but later closed by the IRS. Defense counsel for Stevens and Gilmore believed that they should have been informed of the IRS investigation in order to question Hakim about it during the trial. In June 2011, various post-trial motions, including motions for new trial, directed verdict, and for acquittal, were filed by Stevens and Gilmore based upon the Deshotels information.
The motions were scheduled for consideration by the federal court on August 15, 2011. Before court convened, the Assistant United States Attorneys and defense counsel met for an extended period of time in chambers with the federal judge who had presided over the defendants’ jury trial to discuss evidentiary issues. When the matter was taken up in open court, an ordinary evidentiary hearing was not conducted. Instead, the ^attorneys for the prosecution and the defendants proceeded to describe a lengthy list of exhibits, affidavits, documents, and stipulations that were being submitted to the federal court for its consideration. The parties also asked to submit additional briefs to the court in connection with the filings.
Counsel for one of the defendants stated that his client wished to stipulate that:
[I]f Agent Heusel were called to testify, that he would testify that his supervisor informed him that they were not going to refer Mr. Hakim’s case to the civil section of the IRS for a possible audit since he was a cooperating witness with the government.
The Assistant United States Attorney agreed with the stipulation stating:
If Agent Heusel had been called to testify, that’s what he would testify to.
The stipulation concerning Agent Heusel constituted only part of the very complicated matter being submitted to the federal district court.
O’Donnell had covered the trial of Stevens and Gilmore, was present in court on August 15, 2011, and heard the above stipulation. Immediately after court adjourned, she approached Stevens, and was filmed asking him:
Eddie Hakim gave testimony to make his IRS investigation go away. Is it enough to acquit you?
Stevens responded:
It’s up to a judge. A judge will make that call.
Later that day, Nexstar broadcast a live report by O’Donnell on its television station, KTVE. The report included the video of O’Donnell’s interaction with Stevens.
|4On September 14, 2011, the federal court issued a 43-page opinion granting a new trial to Stevens and Gilmore. Although this ruling was later reversed by the same judge in January 2012, this sequence of events demonstrates the complex legal issues that were at issue.
*1184 In April 2012, Hakim filed separate defamation suits against O’Donnell and Nex-star based upon the statement made in the news broadcast in August 2011. The cases were consolidated by the lower court.
We note that, in his petitions, the plaintiff failed to quote the entire inquiry made by O’Donnell to Stevens which places it in the proper context. Rather, he alleged, “Plaintiff shows that the Defendant reported on the trial of two Monroe City Councilmen, which began' in April of 2011, and reported on or about August 15, 2011 by erroneous information about Plaintiff to [its] entire viewing audience on said viewing date, namely by stating, ‘Eddie Hakim gave his testimony in exchange for his IRS investigation going away.’ ” The plaintiff did not set forth in his petition that the statement also included the question by O’Donnell to Stevens, “Is it enough to acquit you?” or Stevens’ response, “It’s up to a judge. A judge will make that call.”
Hakim asserted that he did not know of the IRS investigation at the time he gave his testimony. He claimed that O’Donnell failed to properly investigate the situation to ascertain the truth and, with reckless abandon, made the statement which caused the viewing public to think that there was an arrangement between Hakim and the United States Attorney’s office for Hakim to trade his testimony to relieve himself of possible legal Inconsequences. He alleged that O’Donnell was an agent of Nexstar who was acting in the course and scope of her employment when she made the statement. He claimed that the airing of the false statement constituted defamation and/or slander which damaged his reputation. He sought to recover monetary damages.
The defendants answered, admitting that O’Donnell made the statement, but asserting that the words were taken out of context of the full news report that was broadcast. The defendants denied that the statement was made with any knowledge of its falsity, that it was defamatory, or that Hakim’s reputation was harmed by the statement.
As affirmative defenses, the defendants asserted that the statement was not defamatory as a matter of law because it was broadcast as a report on newsworthy accusations or statements made during a criminal proceeding and was not susceptible to defamatory interpretation. They argued that the news report was capable of an innocent construction because the statement complained of by the plaintiff was a reasonable inference drawn by O’Donnell from newsworthy accusations or statements made during a criminal proceeding. The defendants asserted that the statement was conditionally privileged as a fair and substantially accurate news report on a public judicial proceeding and on a public figure. They claimed the statement was not broadcast with any knowledge that it was false or with reckless disregard for its truth or falsity. The defendants maintained that all inferences made were reasonable and Hakim had not been damaged.
|f,In April 2013, the defendants filed a motion for summary judgment. They contended that O’Donnell’s statement may have contained a mistaken conclusion based upon the stipulation she had heard in court since Hakim did not know he was being investigated by the IRS. They claimed entitlement to summary judgment because the statement was a reasonable inference and an innocent construction of what was heard in court and it was substantially true. They contended that they were entitled to the conditional privilege which attaches to the fair report of governmental proceedings, and the statement was not made with knowledge of falsity or reckless disregard of any falsity.
*1185 A hearing was held on the motion for summary judgment on September 5, 2013. At the conclusion of the hearing, the trial court provided extensive oral reasons for its ruling. The trial court found that a conditional privilege applied in this situation and that the Louisiana Supreme Court ease of Kennedy v. Sheriff of East Baton Rouge, 2005-1418 (La.7/10/06), 935 So.2d 669, provided the applicable legal analysis. Based upon the stipulation O’Donnell heard in court, the trial court reasoned that a lay person could make the reasonable conclusion that there was some type of quid pro quo for Hakim’s testimony. The trial court observed that although O’Donnell’s statement, made right after hearing the stipulation, may have been negligent, O’Donnell and the station were not highly aware that the statement was false. According to the court, there was no showing 17by the plaintiff of malice or lack of good faith.[1] For those reasons, the trial court granted summary judgment in favor of the defendants.
On appeal, the plaintiff argues that the defendants are not entitled to claim a conditional privilege. The plaintiff also contends there is a question of fact as to whether O’Donnell knew or should have known her statement was inaccurate due to her work in covering the bribery trial on a daily basis and reading documents filed before and after the trial. These arguments are without merit.
DEFAMATION AND CONDITIONAL PRIVILEGE
The right to free speech is guaranteed in the constitutions of both the United States and Louisiana. The First Amendment to the United States Constitution provides in pertinent part:
Congress shall make no law ... abridging the freedom of speech, or of the press [.]
The Louisiana Constitution Art. 1, § 7, states:
No law shall curtail or restrain the freedom of speech or of the press. Every person may speak, write, and publish his sentiments on any subject, but is responsible for abuse of that freedom.
The United States Supreme Court has held that not all speech is of equal First Amendment importance. It is speech on matters of public concern that is at the heart of the First Amendment’s protection. Dun & \%Bradstreet, Inc. v. Greenmoss Builders, Inc., 472 U.S. 749, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985). Matters of public concern relate to any matter of political, social, or other concern to the community. Whether speech addresses matters of public concern must be determined by the content, form, and context of a given statement, as revealed by the entire record. See Kennedy v. Sheriff of East Baton Rouge, supra.
Abuses of the right to free speech are actionable under Louisiana law. A cause of action for defamation arises out of a violation of La. C.C. art. 2315. Fitzgerald v. Tucker, 1998-2313 (La.6/29/99), 737 So.2d 706. A statement is defamatory if it tends to harm the reputation of another so as to lower the person in the estima *1186 tion of the community, deter others from associating or dealing with the person, or otherwise expose the person to contempt or ridicule. Kennedy v. Sheriff of East Baton Rouge, supra.
Four elements are necessary to establish a claim for defamation: (1) a false or defamatory statement concerning another; (2) an unprivileged publication to a third party; (8) fault (negligence or greater) on the part of the publisher; and (4) resulting injury. Kennedy v. Sheriff of East Baton Rouge, supra; Costello v. Hardy, 2003-1146 (La.1/21/04), 864 So.2d 129; Trentecosta v. Beck, 1996-2388 (La.10/21/97), 703 So.2d 552.
Defamatory words have traditionally been divided into two categories: those that are defamatory per se and those that are susceptible of a defamatory meaning. Words which expressly or implicitly accuse another of criminal conduct, or which by their very nature tend to injure one’s personal or professional reputation, without considering extrinsic |afacts or circumstances, are considered defamatory per se. When a plaintiff proves publication of words that are defamatory per se, falsity and malice (or fault) are presumed, but may be rebutted by the defendant. Injury may also be presumed. When the words at issue are not defamatory per se, a plaintiff must prove, in addition to defamatory meaning and publication, falsity, malice (or fault), and injury. Kennedy v. Sheriff of East Baton Rouge, supra; Costello v. Hardy, supra.
The Louisiana Supreme Court in Kennedy v. Sheriff of East Baton Rouge, supra, provides a tutorial for navigating and applying the various pronouncements on the law of defamation from the United States Supreme Court and the Louisiana Supreme Court.[2]
The court in Kennedy observed that, in determining the standard of liability in defamation claims, the Supreme Court makes a distinction between plaintiffs who are public officials or figures and private individuals. The case of New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), imposed a high standard on public officials who seek to recover for defamation. In the context of public officials and official conduct, the Supreme Court observed that erroneous statement is inevitable in free debate, and it must be protected if the freedoms of expression are to have the breathing space they need to survive. | inThe Supreme Court held that a public official cannot recover damages for a defamatory falsehood published in relation to official conduct unless he proves actual malice, that is, a statement made with knowledge that it was false or with reckless disregard of whether the statement was false or not. Actual malice must be proven with convincing clarity.
The case of Curtis Pub. Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967), extended the standard of liability outlined in New York Times to public figures. That term is defined as non-public officials who are intimately involved in the *1187 resolution of important public questions or who, by reason of their fame, shape events in areas of concern to society at large. The Supreme Court later recognized the concept of a limited purpose public figure, which are public figures who have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved. See Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).
A different standard is applicable where a plaintiff asserting a defamation claim is a private individual. Declining to extend the standard of liability in New York Times to private individuals, the Supreme Court in Gertz v. Robert Welch, Inc., supra, held that where a private individual sues a media defendant for defamation on an issue of public concern, the states can apply their own standards as long as they do not apply liability without fault. The Supreme Court recognized that a state’s interest in compensating injury to the reputation of individuals is greater in the case of private individuals than for public officials and figures, because private individuals 1,, characteristically have less access to channels of effective communication to counteract false statements than do public ■ officials and public figures. Private individuals have not, by placing themselves in the public eye, voluntarily exposed themselves to the increased risk of injury from defamatory falsehoods. See also Kennedy v. Sheriff of East Baton Rouge, supra.
The Louisiana Supreme Court in Kennedy observed that, in its defamation analysis, the United States Supreme Court has considered whether the defendant is a media or a non-media defendant. However, the court in Kennedy concluded that there was no reason to distinguish between media and non-media defendants.
In addressing the standard of liability, the court in Kennedy concluded that, in cases involving private individuals allegedly injured by a defamatory falsehood in a matter of public concern, the plaintiff must prove that negligence exists as set forth in Restatement (Second) of Torts § 580B (1977). That standard requires the plaintiff to show that the defendant knows the statement to be false and that it defames the other, acts in reckless disregard of these matters, or acts negligently, in failing to ascertain them.
The fault requirement is often set forth in the jurisprudence as malice, actual or implied. Costello v. Hardy, supra. Thus, in order to prevail on a defamation claim, a plaintiff must prove that the defendant, with actual malice or other fault, published a false statement with defamatory words 11 ¿which caused the plaintiff damages. If even one of the required elements of the tort is lacking, the cause of action fails. Costello v. Hardy, supra.
Privilege is a defense to a defamation action. The doctrine of privilege rests upon the notion that sometimes, as a matter of public policy, in order to encourage the free communication of views in certain defined instances, one is justified in communicating defamatory information to others without incurring liability. Privileged communications are divided into two general classes: (1) absolute; and (2) conditional or qualified. Kennedy v. Sheriff of East Baton Rouge, supra.
An absolute privilege exists in a limited number of situations, such as statements by judges and legislators in judicial and legislative proceedings. A conditional or qualified privilege arises in a broader number of instances. There are a variety of situations in which the interest that an individual is seeking to vindicate or to further is regarded as sufficiently important to justify some latitude for making mistakes so that publication of defamatory *1188 statements is deemed to be conditionally or qualifiedly privileged. Kennedy v. Sheriff of East Baton Rouge, supra; Trentecosta v. Beck, supra.
The elements of a conditional privilege have been described as good faith, an interest to be upheld and a statement limited in scope to this purpose, a proper occasion, and publication in the proper manner to the proper parties only. Kennedy v. Sheriff of East Baton Rouge, supra; Martin v. State, Dep’t of Pub. Safety & Corr., Office of State Police, 47,647 (La.App.2d Cir.1/16/13), 109 So.3d 442. The privilege arises from the societal necessity of permitting full and unrestricted communieation | ^concerning a matter in which the parties have an interest or duty without inhibiting free communication in such circumstances by fear that the communicating party will be held liable in damages if the good faith communication later turns out to be inaccurate. Kennedy v. Sheriff of East Baton Rouge, supra; Dyas v. Shreveport Police Dept., 48,804 (La.App.2d Cir.2/26/14), 136 So.3d 897.
The practical effect of the assertion of the conditional or qualified privilege is to rebut the plaintiffs allegation of fault and to place the burden of proof on the plaintiff to establish abuse of privilege. Dyas v. Shreveport Police Dept, supra.
Determining whether a conditional or qualified privilege exists involves a two-step process. First, it must be determined whether the attending circumstances of a communication occasion a conditional or qualified privilege. The second step of the analysis is a determination of whether the privilege was abused, which requires that the grounds for the abuse— malice and lack of good faith — be examined. The first step is generally determined by the court as a matter of law. The second step of determining abuse of a conditional or qualified privilege or malice is generally a fact question unless only one conclusion can be drawn from the evidence. Kennedy v. Sheriff of East Baton Rouge, supra.
A conditional or qualified privilege has been extended to include those situations in which there is a reporting of governmental proceedings 114and activities. Trentecosta v. Beck, supra.[3] This privilege is primarily extended to the media, but also extends to any person who makes an oral, written, or printed report to pass on information that is available to the general public. Trentecosta v. Beck, supra.[4]
*1189 A privilege is abused if the publisher (a) knows the matter to be false, or (b) acts in reckless disregard as to its truth or falsity. Kennedy v. Sheriff of East Baton Rouge, supra; Trentecosta v. Beck, supra.
Mere negligence as to the falsity (or lack of reasonable grounds for believing the statement to be true) is not sufficient to prove abuse of the conditional privilege. Instead, knowledge or reckless disregard as to falsity |1Ris necessary for this purpose. Kennedy v. Sheriff of East Baton Rouge, supra; Martin v. State, Dep’t of Pub. Safety & Corr., Office of State Police, supra. Failure to investigate does not present a jury question on whether a statement was published with reckless disregard for the truth. Romero v. Thomson Newspapers (Wisconsin), Inc., 1994-1105 (La.1/17/95), 648 So.2d 866, cert, denied, 515 U.S. 1131, 115 S.Ct. 2556, 132 L.Ed.2d 810 (1995); Kennedy v. Sheriff of East Baton Rouge, supra. Under this standard, even proof of gross negligence in the publication of a false statement is insufficient to prove reckless disregard. Kennedy v. Sheriff of East Baton Rouge, supra.
In considering the definition of “reckless disregard,” Kennedy noted that the Supreme Court has explained that only those false statements made with a high degree of awareness of their probable falsity meet the reckless disregard standard, citing Garrison v. State of La., 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964). The Supreme Court stated that reckless disregard requires a plaintiff to prove that the publication was deliberately falsified, or published despite the publisher’s awareness of probable falsity. Curtis Pub. Co. v. Butts, supra; Kennedy v. Sheriff of East Baton Rouge, supra. The Supreme Court has noted that there must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. St. Amant v. Thompson, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968); Kennedy v. Sheriff of East Baton Rouge, supra.
| ^SUMMARY JUDGMENT A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. Samaba v. Rau, 2007-1726 (La.2/26/08), 977 So.2d 880; Amos v. Crouch, 46,456 (La.App.2d Cir.6/29/11), 71 So.3d 1053; Carter Enterprises, LLC v. Scott Equipment Co., LLC, 46,862 (La.App.2d Cir.4/11/12), 91 So.3d 1134.
Appellate courts review summary judgments de novo, under the same criteria that govern a district court’s consideration of whether summary judgment is appropriate. Jenkins v. Willis Knighton Medical Ctr., 43,254 (La.App.2d Cir.6/4/08), 986 So.2d 247, writ not cons., 2008-1507 (La.10/10/08), 993 So.2d 1273. A court must grant a motion for summary judgment “if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B). A fact is material if its existence or nonexistence may be essential to *1190 the plaintiffs cause of action under the applicable theory of recovery. Amos v. Crouch, supra; Carter Enterprises, LLC v. Scott Equipment Co., LLC, supra.
Because of the chilling effect on the exercise of free speech, defamation actions have been found particularly susceptible to summary judgment. Summary adjudication is a useful tool and an effective screening device for avoiding the unnecessary harassment of defendants by unmeri-torious actions which threaten the free exercise of rights of speech |17and press. Mashbum v. Collin, 855 So.2d 879 (La. 1977); Kennedy v. Sheriff of East Baton Rouge, supra. See and compare Sassone v. Elder, 626 So.2d 345 (La.1993).[5]
Summary judgment procedure is favored and is designed to secure the just, speedy and inexpensive determination of actions. La. C.C.P. art. 966(A)(2); Jenkins v. Willis Knighton Medical Ctr., supra. The moving party bears the burden of proof. However, when he will not bear the burden of proof at trial on the matter before the court on summary judgment, the movant is not required to negate all essential elements of the adverse party’s claim; he need only point out an absence of factual support for one or more essential elements of the adverse party’s claim. If the adverse party then fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial, there is no genuine issue of material fact and summary judgment is appropriate. La. C.C.P. art. 966(C)(2); Carter Enterprises, LLC v. Scott Equipment Co., LLC, supra.
DISCUSSION
In the present case, the trial court opined that there was a genuine issue of material fact as to whether the plaintiff was a public figure and that issue could not be resolved on a motion for summary judgment. The defendants question this finding on appeal. We find it unnecessary to decide this issue. Even assuming the plaintiff to be a private individual for |1spurposes of evaluating this matter, the trial court correctly found that the defendants were entitled to summary judgment.
Under Gertz and Kennedy, discussed above, the defamation claim of a private individual plaintiff against both media and non-media defendants is evaluated under the negligence standard contained in Restatement (Second) of Torts § 580B (1977), unless a conditional privilege applies. As set forth above, the existence of a privilege is a question of law. Here, there is no question that the conditional privilege for the reporting of governmental proceedings and activities, announced in Trentecosta v. Beck, supra, is applicable. The defendants were reporting on judicial proceedings regarding public corruption, which was a matter of public concern.
Because the privilege exists in this matter, the negligence standard for determining liability for defamation is not applicable. Rather, the plaintiff was required to show that the conditional privilege was abused. As set forth above, mere negligence, gross negligence, and even failure to investigate the alleged defamatory statement are insufficient to show abuse of the privilege. The plaintiff was required to show that the defendants knew the matter to be false or acted in reckless disregard as to its truth or falsity. This requires a showing that the publication was *1191 deliberately falsified or published despite awareness of its probable falsity.
The plaintiff in this case has continued to argue the applicability of the negligence standard and asserts that O’Donnell, by virtue of covering the bribery trial of the councilmen, reviewing some of the court documents, and frequently speaking with the attorney for one of the defendants, should | Tflhave known that the plaintiff was unaware of the IRS investigation of him and did not trade his testimony for a termination of that investigation. The negligence standard is simply not applicable in this case.[6]
In connection with the bribery case, the federal trial court considered the councilmen’s motions for new trial along with several other motions. After the two-hour conference with the attorneys in chambers, the parties submitted to that court numerous exhibits and affidavits, as well as stipulations as to what certain witnesses would say if called to testify. The federal trial court heard no evidence, but agreed to review the documents and stipulations. Approximately one month later, the scholarly federal trial court issued its original, lengthy, 43-page opinion granting the motion for new trial.
The federal court observed that the IRS investigation provided an avenue of attack on Hakim’s capacity for truthfulness not otherwise explored. The court noted that at trial, Hakim held himself out as someone completely unaware that he was paying bribes until one day it occurred to him that he was the victim of the Stevens and Gilmore; then he felt compelled to end the corruption. The court stated that, while other testimony showed Hakim to be a tough businessman who was not well-liked by local political figures, Deshotels’ allegations and the existence of the IRS 12oprimary investigation undercut Hakim’s portrayal of himself as an honest businessman seeking to right a wrong. The court observed that the undisclosed information regarding the IRS investigation demonstrated that the plaintiff had a reason to be biased in his testimony in the bribery case and the jury was improperly denied the opportunity to consider that bias. The court noted that, although the plaintiff was unaware of the IRS primary investigation, he was aware of his conduct giving rise to the investigation. The court stated, “Thus Hakim had motivation to assist the FBI with an investigation into public bribery and to deflect attention from himself. Defendants would have been able to offer extrinsic evidence of this bias at trial.”
The federal trial court concluded that the plaintiff “received a benefit of which the jury was unaware. Because he assisted the FBI in this case, the IRS did not move forward his ease to the civil unit to determine if an audit should be performed. The Government candidly admits that he received a benefit in this way.” The court noted that the plaintiff received the benefit of not having an IRS audit performed and may have received the benefit of keeping a large sum of money he and his companies were obligated to pay the IRS. *1192 The court concluded, “Given the Government’s reliance on Hakim’s testimony and Defendants’ defense of attacking Hakim’s credibility, the Court cannot say with confidence that Stevens and Gilmore received a fair trial in the absence of evidence of the Deshotel allegations, the IRS primary investigation, and the benefit conferred on Hakim by the IRS. Therefore, Defendants are entitled to a new trial.”
_|gjEven though the federal trial court later reversed its ruling, its initial ruling shows that, even with an intense, thorough, and lengthy review of all the factors in this case, that court concluded that the plaintiff received a benefit from the termination of the IRS investigation of him. This conclusion was very similar to that drawn by O’Donnell, a lay person, immediately after the hearing. In this context, it is clear that the conclusion drawn by O’Donnell may have been a misunderstanding of the stipulation she heard in court, but her conclusion certainly was reasonable and understandable. Her statement was a fair abridgment of the occurrence reported and was a comment on a judicial proceeding made in the reasonable belief of its truth. As observed in Hopkins v. Keith, 348 So.2d 999 (La.App. 2d Cir.1977), unit not cons., 350 So.2d 893 (La.1977):
In reporting matters of public interest involving legal and judicial proceedings and records some errors and inaccuracies are bound to occur in the use of technical terms. Not every error or inaccuracy should be actionable. The error should be a significant variation from the truth to give rise to liability. In order to avoid a chilling effect on the exercise of First Amendment rights, the media must be allowed breathing space.
The plaintiff has failed to present any evidence to show that the defendants knew the statement made by O’Donnell was false or that they acted in reckless disregard of its truth or falsity. In other words, the plaintiff has failed to show that the defendants had a high degree of awareness of the statement’s probable falsity or entertained serious doubt as to its truth. As noted by the trial court, the only conclusion that can be drawn from the circumstances surrounding this case is that the conditional privilege was not | ^abused.[7] Therefore, the plaintiff will not be able to prevail on his claim for defamation.
The plaintiff had the burden of proving his probable success on his defamation claim against the defendants. Against the backdrop of the undisputed facts of this case, it is clear that a conditional privilege applied, raising the standard of liability to be proved by the plaintiff to that of actual malice. Further, the plaintiff has failed to show that the conditional privilege was abused. The trial court was correct in granting summary judgment in favor of the defendants.
CONCLUSION
For the reasons stated above, the ruling of the trial court, granting summary judgment in favor of the defendants, Daisy O’Donnell and Nexstar Broadcasting, Inc., d/b/a KTVE NBC 10, and dismissing the claims of the plaintiff, N. Edward Hakim, is affirmed. Costs in this court are assessed to the plaintiff.
AFFIRMED.

. Even though the trial court found that the defendants were entitled to summary judgment due to the existence of a conditional privilege, it also found that several arguments were made that did not entitle the defendants to summary judgment. According to the court, the substantial truth argument involves a fact question as to whether the plaintiff’s reputation was harmed by the fact that the statement was made. Next, the court found there was a genuine issue of material fact as to whether the plaintiff was a public figure. The court observed that, because it found the conditional privilege applied, it did not reach the issue of injury, but observed that there was no showing as to that element.

. In Kennedy, the Louisiana Supreme Court considered a claim of defamation by a private individual against a non-media defendant. The plaintiff in that case presented a $100 bill at a fast food restaurant to pay for a purchase. Restaurant employees suspected the bill was counterfeit and alerted law enforcement officials. The plaintiff was handcuffed and detained by sheriff's deputies. However, it was soon determined that the money was not counterfeit. The plaintiff was released and his money returned. The plaintiff sued the restaurant and the sheriffs office on several grounds, including defamation. The defendants were granted summary judgment in the trial court. The decision was reversed by the appellate court, but reinstated by the Louisiana Supreme Court.

. Restatement (Second) of Torts, § 611 (1977) provides:
The publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgement of the occurrence reported.

. Criminal statutes are not, in and of themselves, definitive of civil liability and do not set the rule for civil liability; but they may be guidelines for the court in fixing civil liability. Gugliuzza v. K.C.M.C., Inc., 606 So.2d 790, (La. 10/19/92); Martin v. State, Dep't of Pub. Safety & Corr., Office of State Police, supra. Although this is a civil matter, it is interesting to note that La. R.S. 14:47 provides for criminal defamation. A qualified privilege to that offense is provided in La. R.S. 14:49:
A qualified privilege exists and actual malice must be proved, regardless of whether the publication is true or false, in the following situations:
(1) Where the publication or expression is a fair and true report of any judicial, legislative, or other public or official proceeding, or of any statement, speech, argument, or debate in the course of the same.
(2) Where the publication or expression is a comment made in the reasonable belief of its truth, upon,
(a) The conduct of a person in respect to public affairs; or
(b) A thing which the proprietor thereof offers or explains to the public. *1189 (3) Where the publication or expression is made to a person interested in the communication, by one who is also interested or who stands in such a relation to the former as to afford a reasonable ground for supposing his motive innocent.
(4) Where the publication or expression is made by an attorney or party in a judicial proceeding.

. We note that a special defense motion to strike, which is akin to a motion for summary judgment, exists for defamation and other actions concerning the rights to petition and to free speech in connection with a public issue under the United States and Louisiana constitutions. See La. C.C.P. art. 971. This motion was not utilized in this case.

. We note that, at oral argument, plaintiffs counsel cited the unreported case of Henry v. Lake Charles American Press, L.L.C., (W.D.La. 2008), 2008 WL 398506, in support of his claim that the negligence standard applies in this case. In this version of Henry, a federal district court denied a special motion to strike under La. C.C.P. art. 971, finding that the plaintiff had established a probability of success on his defamation claim under the negligence standard. The district court did not discuss the applicability of a conditional or qualified privilege. Plaintiff’s counsel did not note to this court that the district court decision was reversed by the Fifth Circuit in Henry v. Lake Charles American Press, L.L.C., 566 F.3d 164 (5th Cir.2009), based upon its finding that the plaintiff had not demonstrated a probability of success in his defamation claim and granting the motion to strike in favor of the defendant. Accordingly, Henry is unpersuasive.

. This case is distinguishable from Bradford v. Judson, 44,092 (La.App.2d Cir.5/6/09), 12 So.3d 974, , writ denied, 2009-1648 (La. 10/16/09), 19 So.3d 482, in which this court found there was a genuine issue of material fact as to whether a conditional privilege was abused. Here, the only conclusion that can be drawn is that there was no abuse.